[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 432.]

SOLER ET AL., APPELLANTS, *v*. EVANS, ST. CLAIR & KELSEY ET AL.,

APPELLEES.

**[Cite as *Soler v. Evans, St. Clair & Kelsey*, 2002-Ohio-1246.]**

*Civil procedure—Frivolous conduct in civil actions—Pursuant to R.C. 2323.51, an aggrieved party has option of filing a sanctions motion anytime prior to commencement of trial or within twenty-one days of final judgment— R.C. 2323.51, construed—General jury demand included within a complaint applies to issues raised in a compulsory counterclaim even if complaint is later voluntarily dismissed.*

(No. 00-2181—Submitted October 30, 2001—Decided March 20, 2002.)

CERTIFIED by the Court of Appeals for Franklin County, No. 99AP-1020.

————————————

**SYLLABUS OF THE COURT**

1. Pursuant to R.C. 2323.51, an aggrieved party has the option of filing a sanctions motion at any time prior to the commencement of the trial or within twenty-one days of a final judgment. R.C. 2323.51(B) construed.

2. A general jury demand included within a complaint applies to issues raised in a compulsory counterclaim even if the complaint is later voluntarily dismissed.

————————————

**FRANCIS E. SWEENEY, SR., J.**

{¶ 1} Appellant Susan Soler, along with her mother and brother, inherited sizable real estate investments when her father died in 1982. The three family members began a partnership in 1983 that was managed by Soler's brother. In 1988, appellant began to suspect that her brother was misappropriating partnership assets, so she retained attorney Robert St. Clair, appellee, to seek an accounting and

conduct an audit of the partnership.  When Soler's mother died a few months later, leaving Soler's brother as the executor of the estate, Soler enlisted St. Clair and his firm to protect her interest in the estate.

{¶ 2} Appellant soon became concerned with her attorneys' representation. Eventually, her misgivings gave way to a complete breakdown in the attorney-client relationship.  In November 1995, Soler, through new counsel, appellant James Connor, brought this action alleging that St. Clair and his law firm were liable for damages resulting from their breach of contract, legal malpractice and negligence, and conversion of appellant's funds.  Among the parties listed as defendants in the complaint and amended complaint were appellees St. Clair, J. Michael Evans, Charles Kelsey, Carol King, and David Bainter, all attorneys whom plaintiff believed to have been partners of the firm.[1]  Soler's complaint and amended complaint contained jury demands.  In his answer, St. Clair asserted a counterclaim for legal fees.

{¶ 3} Motions for summary judgment were filed by all of the parties.  The trial court granted the motions of most of the defendants, including Bainter, Kelsey, and King.  Before trial, however, Soler voluntarily dismissed her case pursuant to Civ.R. 41(A).  Thus, the only issue remaining was St. Clair's counterclaim for legal fees.  Soler filed a motion *in limine* demanding a jury trial.  The trial court denied the motion, finding that it was untimely.  After a bench trial was held, the court granted judgment in St. Clair's favor for the exact amount requested:  $47,823.72 plus interest.

{¶ 4} Defendants St. Clair, Bainter, Kelsey, Evans, and King then filed motions for sanctions.  The court found that Soler and Connors[2] had engaged in

---

1. Paul Aucoin, Michael Nieset, David Belinky, Randall Yontz, Robert Hetterscheidt, David Heier, and Jan Maiden were also named as defendants.
2. Soler and Connors are hereinafter collectively referred to as Soler.

frivolous conduct and were jointly and severally liable for a total amount of $283,294.20 plus ten percent interest.

{¶ 5} On appeal, the court of appeals reversed and remanded the counterclaim judgment for St. Clair. However, the court denied Soler's request for a jury trial on remand. The court of appeals also reversed and remanded the decision on the sanctions motions as to Evans, Kelsey, King, and Bainter.[3] Yet, the court found that all sanctions motions were timely filed.

{¶ 6} The court of appeals, finding its judgment to be in conflict with the Sixth Appellate District in *Edinger v. DeRail, Inc.* (Apr. 12, 1991), Lucas App. No. L-90-158, unreported, 1991 WL 53777, and the Ninth Appellate District in *Skidmore & Hall v. Rottman* (1987), 38 Ohio App.3d 40, 525 N.E.2d 824, certified these matters for our review. The cause is now before the court on a certified conflict.

{¶ 7} The first certified issue contains two parts:

"In an action involving multiple parties and multiple claims, must a party who has received summary judgment file a motion, pursuant to R.C. 2323.51, within twenty-one days of such summary judgment or may the party wait until twenty-one days of when the remaining claims are resolved.

"Similarly, must a party file the motion within twenty-one days of a voluntary dismissal, pursuant to Civ.R. 41(A), when a counterclaim remains pending or may the party wait until twenty-one days of when the counterclaim is resolved?"

{¶ 8} The second certified issue asks:

"Is a general jury demand in a complaint preserved as to the issues in a counterclaim when the demand is contained in a complaint that is later dismissed pursuant to Civ.R. 41(A)?"

---

3. The court of appeals upheld St. Clair's sanction award but reduced it to thirty percent of his attorney's fees.

**{¶ 9}** Both issues are separately discussed below.

I

*SANCTIONS MOTIONS*

**{¶ 10}** The first certified issue relates to the question of the timeliness of the sanctions motions filed by appellees.[4] Specifically, we are asked to determine what the word "judgment" means as used in R.C. 2323.51, the frivolous conduct statute.

**{¶ 11}** R.C. 2323.51(B) provides:

"(1) [A]t any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action * * *."

**{¶ 12}** In this case, Bainter was awarded summary judgment on May 4, 1998, King was awarded summary judgment on June 17, 1998, and Kelsey was awarded summary judgment on September 15, 1998. However, they did not file their sanctions motions until November 12, 1998, which was within twenty-one days of Soler's voluntary dismissal.[5] Soler argues that, according to R.C. 2323.51(B), the motions should have been filed within twenty-one days of each defendant's receiving summary judgment. On January 12, 1999, St. Clair was awarded judgment on his counterclaim. He filed his sanctions motion within twenty-one days of the counterclaim judgment, on February 2, 1999. Similarly, Soler contends that St. Clair should have filed his motion within twenty-one days of the voluntary dismissal. Soler relies on the holding found in *Edinger*.

**{¶ 13}** In *Edinger*, a malpractice case against attorney Thomas Yoder, was dismissed due to improper joinder. Approximately five months later, the remainder of the action was dismissed. Ten days after that, Yoder filed a motion pursuant to

---

4. At the sanctions hearing, Connors admitted that Evans's motion was timely filed.
5. The sanctions motions of Bainter, Kelsey, and King were actually filed on the twenty-second day from the voluntary dismissal, since the twenty-first day was a legal holiday.

R.C. 2323.51. The trial court denied the motion, finding that it was untimely filed. The Sixth District Court of Appeals affirmed the denial, holding that Yoder should have filed his motion within twenty-one days of his dismissal or when he received notice of his dismissal. The court relied upon the language in the statute that allows a motion for sanctions to be filed before the trial begins as support for its decision. The court further stated:

"Preventing a party from filing a motion pursuant to R.C. 2323.51 until all the claims in a complex action were determined would defeat the purpose of that statute. * * * [T]he plain language of the statute discloses a purpose to prevent abuse of process during the course of litigation by providing a means for immediate judicial determination and sanctioning of such abuse. Precluding any action by an aggrieved party at the time of the alleged abuse would greatly reduce its power to deter such conduct thereby circumventing that purpose. Limiting the time for the motion to twenty-one days after judgment is similar to a statute of limitations or the time constrictions set for many other types of motions and is included to bar stale or retaliatory claims."

{¶ 14} In rejecting the *Edinger* court's analysis, the appellate court in the instant case agreed with the Seventh District Court of Appeals in *Olivito v. Cavanaugh* (Dec. 30, 1992), Jefferson App. Nos. 90-J-33 and 90-J-39, unreported, 1992 WL 398435, which found *Edinger's* holding too restrictive. *Olivito* recognized that one of the primary purposes of the statute is to inhibit frivolous conduct during the discovery process. Thus, *Olivito* found that the statutory language supports the conclusion that a party is not required to wait until the end of the litigation to file a motion for sanctions. However, *Olivito* found that it is not necessary that the moving party always file the motion within twenty-one days of the entry of any judgment that could pertain to frivolous conduct. Instead, *Olivito* believed that the statutory language gives the moving party some discretion in deciding when to file the motion. Thus, *Olivito* found that the statute permits the

moving party to file the motion at any time prior to the start of the trial or within twenty-one days after the entry of judgment, but that the term "judgment" should be interpreted as being synonymous with the term "final order" as defined in R.C. 2505.02 (*i.e.,* "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment").

{¶ 15} *Olivito* explained:

"Since the first part of the conjunctive phrase [in the statute] refers to the *entire* period prior to trial, it follows that the only judgment to which the latter part refers is that which is rendered after the trial. * * *

"[W]e believe that public policy supports the foregoing conclusion. The *Edinger* holding places the onus upon a movant to file a motion for sanctions while the action is still pending. If the movant is still a party to the action, this places an additional burden upon the very party who has allegedly been subject to the frivolous conduct. Since the statute was meant to assist that party, he should have the option of deciding whether to bring the motion during the action or after its conclusion." (Emphasis *sic.*)

{¶ 16} We agree with the reasoning espoused in *Olivito.* The plain meaning of the statute provides a means for an immediate judicial determination and a speedy sanctioning of such abuse. However, the aggrieved party also has the option of waiting until the conclusion of the action to seek sanctions. Construing the word "judgment" as used in the statute to mean a final appealable order serves the remedial purpose of the statute. By enacting R.C. 2323.51, the General Assembly sought to provide a remedy for those harmed by frivolous conduct. Yet, by the same token, the General Assembly manifested its intent that there be a cutoff time for this sanction to be imposed. This purpose is served by giving the aggrieved party the option of filing the sanctions motion at any time prior to trial or within twenty-one days of the last judgment rendered in the case. This would assure that twenty-one days after the entry of final judgment, the proceedings would be over.

To adopt appellants' interpretation would penalize the very parties that the statute seeks to benefit. Accordingly, we hold that pursuant to R.C. 2323.51, an aggrieved party has the option of filing a sanctions motion at any time prior to the commencement of the trial or within twenty-one days of a final judgment.

{¶ 17} In this case, the entries granting summary judgment to Bainter, Kelsey, and King did not specifically state that the rulings were final, appealable orders; thus, the final judgment in the case did not come until Soler voluntarily dismissed her suit. Therefore, appellees' motions, filed twenty-one days after the dismissal, were timely filed. With respect to St. Clair, the voluntary dismissal was not a final order because his counterclaim remained pending. When judgment was rendered on the counterclaim, the order became final for him. Since St. Clair filed his sanctions motion twenty-one days after judgment on the counterclaim, we find that the motion was timely filed. The court of appeals' decision on this issue is affirmed.[6]

II

*JURY TRIAL*

{¶ 18} Soler's complaint and amended complaint contained a general jury demand. Along with his answer, St. Clair filed a counterclaim for legal fees but did not request a jury trial. Soler's reply to the counterclaim did not contain a jury demand. Later, Soler voluntarily dismissed her complaint pursuant to Civ.R. 41(A). Thus, the issue is whether Soler was entitled to a jury trial on St. Clair's remaining counterclaim in light of her voluntary dismissal.

---

6. The appellate court found that the trial court had failed to consider Soler's evidence offered to prove the existence of a partnership. Thus, upon remand, it instructed the trial court to consider the partnership evidence and decide whether adjustments to the sanctions awards are necessary. We do not disturb this finding.

{¶ 19} The right to a jury trial has its roots in the Magna Charta. The right is reasserted in both our Ohio and United States Constitutions.[7] It has long been held that the right of trial by jury is a substantive, fundamental constitutional right. *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 421, 633 N.E.2d 504, 510. Yet the right to a jury trial is not automatic. Civ.R. 38, patterned after Fed.R.Civ.P. 38, deals with civil jury trials and places the burden of requesting a jury trial on the parties to the lawsuit. The party who desires a jury trial must take affirmative action. See Staff Note to Civ.R. 38.

{¶ 20} Civ.R. 38(B) provides, "Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue." Civ.R. 38(C) states, "In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable." Therefore, if a general jury demand is made without specifying particular issues, it will be interpreted as a demand for a jury trial on all issues triable by a jury. *Horwitz v. Alloy Automotive Co.* (N.D.Ill.1988), 677 F.Supp. 564, 566, citing 9 Wright & Miller, Federal Practice and Procedure (1971), Section 2318, fn. 10.[8] In *Horwitz,* the court construed this to mean that once a general jury demand is timely asserted, a second demand need not be made after the filing of a counterclaim to assure a jury trial on issues raised in the counterclaim or reply. *Id.*

{¶ 21} Hence, the fact that St. Clair or Soler did not demand a jury trial as to the counterclaim is irrelevant. Soler's general demand served as notice to her opponents that she wanted a jury trial to the extent guaranteed by the Ohio and United States Constitutions. *Rosen v. Dick* (C.A.2, 1980), 639 F.2d 82, 91. This

---

7. The right to a jury trial is found in Section 5, Article I of the Ohio Constitution and the Seventh Amendment to the United States Constitution.

8. Civ.R. 38 and 39 bear language almost identical to Fed.R.Civ. 38 and 39. See Staff Note to Civ.R. 38. Thus, federal cases provide guidance to our interpretation of these rules.

includes St. Clair's counterclaim, which was compulsory, since it arose out of the same operative facts as the underlying claims in the complaint. See Civ.R. 13(A).

{¶ 22} However, Soler voluntarily dismissed her complaint pursuant to Civ.R. 41(A). St. Clair argues that the effect of the voluntary dismissal was to eliminate Soler's right to a jury trial. St. Clair asserts that according to *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 716 N.E.2d 184, a voluntary dismissal without prejudice leaves the parties as if no action had been brought at all. Thus, St. Clair contends that once Soler filed her notice of dismissal, the jury demand was a nullity—it did not exist. Therefore, since Soler did not request a jury trial in her answer to the counterclaim, St. Clair argues that a timely request was not made and a bench trial was proper.

{¶ 23} Soler disagrees with St. Clair's argument. She asserts that the voluntary dismissal of the underlying complaint is not a retraction of the jury demand. She relies on the conflict case of *Skidmore & Hall v. Rottman* (1987), 38 Ohio App.3d 40, 525 N.E.2d 824.

{¶ 24} In *Skidmore,* the reply to the counterclaim contained a general jury demand. The counterclaim was dismissed prior to trial. Thus, the issue was whether the demand applied to the remaining complaint. In holding that it did, the appellate court found that once a general jury demand is made pursuant to Civ.R. 38, the only ways to waive such right are found in Civ.R. 39(A). Since none of these methods applied, the right to a jury trial remained despite the voluntary dismissal of the counterclaim.

{¶ 25} We agree with the holding in *Skidmore.* Civ.R. 38(D) states that once a party has demanded a jury trial, the demand cannot be withdrawn without the consent of the parties. Civ.R. 39 provides the general methods to waive the right to a jury trial once such a request has been made. Civ.R. 39(A) states:

"The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral

stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist. The failure of a party or his attorney of record either to answer or appear for trial constitutes a waiver of trial by jury by such party and authorizes submission of all issues to the court."

{¶ 26} The dismissal of the pleading containing the jury request is not mentioned as a possible method to waive the right to a jury trial. In fact, such a holding would be contrary to the established case law. Since none of the waiver methods mentioned in Civ.R. 39 was utilized in this case, Soler's right to a jury trial remained intact.

{¶ 27} Therefore, we hold that a general jury demand included within a complaint applies to issues raised in a compulsory counterclaim even if the complaint is later voluntarily dismissed. Thus, Soler was permitted to rely upon her general jury demand contained in her complaint as to all issues contained in the counterclaim. The court of appeals' decision on this issue is reversed. The cause is remanded for a jury trial on St. Clair's counterclaim in accordance with the appellate court's ruling that Soler has the right to assert legal malpractice as a defense.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., DOUGLAS, BLACKMON, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in syllabus and judgment.

PATRICIA A. BLACKMON, J., of the Eighth Appellate District, sitting for RESNICK, J.

_____

10

*James P. Connors,* for appellant Susan A. Soler.

*Vorys, Sater, Seymour & Pease, L.L.P.,* and *Bruce L. Ingram,* for appellant James P. Connors.

*Fry, Waller & McCann Co., L.P.A.,* and *Barry A. Waller,* for appellee Robert B. St. Clair.

*Downes & Hurst, Rufus B. Hurst* and *Edward S. Kim,* for appellee Charles E. Kelsey.

*Chester, Willcox & Saxbe, L.L.P., Karen S. Hockstad* and *Eugene B. Lewis,* for appellees Carol King and David Bainter.

_____