OPINION
{¶ 1} In this case, Lee Surface appeals from a trial court decision of August 21, 2002, awarding Marcia Grottla-Kennedy $5,000 in attorney fees. In support of the appeal, Surface raises the following assignments of error:
 {¶ 2} I. The trial court deprived Appellant, Plaintiff, due process when it proceed (sic) to hear Appellee's, Defendant (sic) Motion for Attorney fees because that motion fails to allege any operative facts.
 {¶ 3} II. The trial court exceeded it (sic) jurisdictional authority when it rendered judgment against Appellant on alternate theories when all alternated (sic) theories were jurisdictionally time barred by a prior final order of the court.
 {¶ 4} III. If the trial court awarded an attorney fee judgment to Appellee under the authority of Civ.R. 11 or the frivolous litigation statute, R.C. 2323.51, that award is not supported by any evidence.
 {¶ 5} IV. If the trial court awarded an attorney fee judgment to Appellee because negations (sic) failed that award is contrary to law and or not supported by any evidence.
 {¶ 6} V. If the trial court awarded an attorney fee judgment to Appellee because of a significant disparity in income that award is contrary to law and contrary to the greater weight of the evidence.
 {¶ 7} Grottla-Kennedy has also filed a motion with our court for attorney fees in the amount of $1,818.75.
 {¶ 8} After considering the assignments of error and applicable law, we find the appeal without merit. Accordingly, the trial court judgment will be affirmed. The motion for attorney fees will also be overruled, although the issue is close.
 I {¶ 9} The events giving rise to this appeal began in April, 1998, when Surface filed a complaint in the Domestic Relations Court, Juvenile Division, Clark County, asking to establish paternity for a daughter (Allison Kennedy), who was born on March 23, 1988. Allison was born while the parties lived together, and they never married thereafter. On June 16, 1998, Grottla-Kennedy filed an answer admitting that Surface was Allison's father. Grottla-Kennedy also asked for an award of retroactive support.
 {¶ 10} Temporary support of $97.45 per week was ordered in June, 1998. However, filing a final support order took more than three years. Finally, on July 10, 2001, a magistrate filed a decision awarding support retroactive to June 22, 1998. Surface was ordered to pay $118.02 per week in support, plus $50 per week on an accumulated arrearage. Surface filed timely objections to the magistrate's decision. In the decision, the magistrate had also reserved the right to apportion and assess legal fees and deposition costs and fees of the parties. In this regard, the magistrate ordered the parties to file any pleadings requesting fees within thirty days. Consequently, on August 2, 2001, Grottla-Kennedy filed a motion, asking for attorney fees under R.C. 2323.51, due to Surface's frivolous conduct in connection with establishing child support. The court ordered a pretrial to be held on the objections and the attorney fee issue on August 27, 2001. In the meantime, Surface filed a "complaint" of criminal contempt, obstinate behavior, and fraudulent transfers against Grottla-Kennedy on August 13, 2001. This complaint was followed by 49 pages of "amended objections" to the July, 2001 magistrate's decision. The amended objections were filed on September 7, 2001.
 {¶ 11} In an entry filed November 7, 2001, the trial court found that Surface's actions since the filing of the paternity complaint were "a sham to prevent an increase in the payment of support for his daughter." The court also adopted the magistrate's July 10, 2001 decision, including the magistrate's award of support retroactive to June 22, 1998, which was the date of the original hearing on the paternity complaint. Surface subsequently appealed, and we affirmed the trial court decision on April 18, 2002. See Surface v. Grottla-Kennedy, Clark App. No. 2001 CA 94, 2002-Ohio-1894.
 {¶ 12} While the above appeal was pending, the magistrate held a hearing on the issue of attorney fees. This hearing was held on December 3, 2001, and the magistrate's decision was filed a few months later, on February 22, 2002. In the decision, the magistrate awarded Grottla-Kennedy $5,000 in attorney fees, and specifically commented on testimony from an attorney known to the court about the appropriateness, reasonableness, and necessity of the fees. The magistrate also noted that Surface and Grottla-Kennedy had agreed to cooperate in computing child support, but that Surface failed to cooperate, causing Grottla-Kennedy to incur significant fees.
 {¶ 13} Surface filed objections to the magistrate's decision on March 8, 2002, and asked for leave to amend the objections following a review of the transcript. Although the transcript was filed on May 23, 2002, Surface did not file any amended objections. After review, the trial court filed an entry on August 21, 2002, adopting the magistrate's decision as the order of the court. This decision is the one now being appealed.
 {¶ 14} In the first assignment of error, Surface claims that he was deprived of due process because the magistrate heard a motion for attorney fees that did not allege any operative facts. As support for this assignment of error, Surface relies on Drumm v. Drumm (Mar. 26, 1999), Montgomery App. Nos. 16631, 17115, 1999 WL 198120, in which we commented that "[a] general request for "attorney fees" in a prayer for relief fails to portray the operative facts for which R.C. 3105.18(H) permits the court to make an award of fees." In light of this remark, Surface claims that Grottla-Kennedy's motion for attorney fees was required to allege "operative facts" meriting an award of fees. We disagree.
 {¶ 15} As an initial point, we note that Surface is a pro se
litigant. Unfortunately, such litigants fail, at times, to understand some subtleties of legal analysis and may cite cases or statutes that seem applicable when they are not relevant. For example, Drumm is inapplicable because it involves a statute that is different from the one involved in the present case.
 {¶ 16} In Drumm, the issue was whether a trial court properly awarded fees from the time a divorce complaint was filed, since the fee request was not filed until several months after the complaint. The problem with awarding fees for that time period was that attorney fees under R.C. 3105.18(H) are awarded prospectively only. Prospective awards are made because R.C. 3105.18(H) is concerned with the ability of divorcing parties to adequately protect their interests absent an award of fees. 1999 WL 198120, *15. To counter this argument, the plaintiff inDrumm argued that the prayer for relief in her complaint authorized the trial court to make the fee award. We disagreed, and in doing so, made the statement that Surface relies upon for his "due process" argument, i.e, that the complaint did not portray operative facts meriting an award of fees.
 {¶ 17} In contrast, R.C. 2323.51 is concerned with preventing harassment of opposing parties, and authorizes an award of fees where the court finds that certain actions have occurred. In deciding if fees should be awarded, a court might, by necessity, have to consider activity in the case from its origin, since the fee award is designed to compensate an aggrieved party for expenses involved in responding to improper actions. These improper actions could have taken place from the very beginning of the case, and a fee award could encompass these actions, even if the motion for fees were not made until later in the case. In fact, the statute authorizes the fee request at any point, even after judgment. R.C. 2323.51(B)(1).
 {¶ 18} As an additional mater, R.C. 2323.51, itself, does not specify any particular form for the motion. In this regard, R.C.2323.51(B)(1) authorizes an award of fees to a party adversely affected by frivolous conduct. R.C. 2323.51(B)(2) then provides that "[a]n award may be made pursuant to division (B)(1) of this section upon the motion of a party to a civil action." Certain procedures are included for the trial court to follow, but the statute does not specify any particular format for the motion.
 {¶ 19} Nonetheless, even if some type of notice were required, the motion that Grottla-Kennedy filed did contain an attachment that listed all fees allegedly incurred due to the allegedly frivolous conduct. Consequently, Surface had ample notice of the "operative facts" supporting the motion.
 {¶ 20} Based on the preceding discussion, the first assignment of error is overruled.
 II {¶ 21} In the second assignment of error, Surface contends that the trial court lacked jurisdiction to award fees. Surface's argument is muddled and extremely confusing, but from what we can discern, Surface appears to contend that the motion for attorney fees was untimely because it was not filed within 21 days of an alleged final order that was entered on July 10, 2001. Again, we disagree.
 {¶ 22} R.C. 2323.51(B)(1) provides, in pertinent part, that:
 {¶ 23} "at any time prior to the commencement of the trial in a civil action or within twenty-one days after the entry of judgment in a civil action * * *, the court may award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct."
 {¶ 24} The Ohio Supreme Court has interpreted this statute to mean that a party has discretion in deciding when to file a motion for attorney fees. According to the court, an aggrieved party may file at any point prior to trial, or may wait until after the last judgment in the case. In the latter event, the motion must be filed within 21 days after the last judgment that is entered. As the court noted, "this would assure that twenty-one days after entry of final judgment, the proceedings would be over." Soler v. Evans, St. Clair Kelsey, 94 Ohio St.3d 432,436, 2002-Ohio-1246. As an example, the plaintiff in Solar voluntarily dismissed her action in October, 1998, but one motion for attorney fees was not filed until after a defendant subsequently received judgment on a counterclaim in January, 1999. Although the plaintiff had voluntarily dismissed the action more than 21 days earlier, the motion for fees was found to be timely, because the counterclaim judgment was the final judgment entered as to that party. Id.
 {¶ 25} In the present case, the motion for attorney fees was not filed within 21 days of the July 10, 2001 magistrate's decision on support. Surface contends that the motion was, therefore, untimely, depriving the trial court of jurisdiction to award fees. However, the magistrate's decision was not a final, appealable order on July 10, 2001, despite the fact that the trial judge adopted the decision as an order of the court on the same day that it was filed.
 {¶ 26} Under Civ.R. 53, the judge's adoption of the decision would only have been a final order in the absence of objections to the magistrate's decision. Specifically, at the time the decision was filed, Civ.R. 53(E)(4)(c) provided that "[t]he court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered."
 {¶ 27} Consistent with this rule, the trial court immediately ordered judgment on July 10, 2001, when the magistrate's decision was filed. However, Surface then filed objections to the decision on July 24, 2001, which caused the order not to be final until such time as the court ruled on the objections. Ultimately, the trial court overruled the objections on November 7, 2001, and that was the final order in the case. As we mentioned earlier, we rejected Surface's appeal of that particular order in Surface v. Grottla-Kennedy, Clark App. No. 2001 CA 94, 2002-Ohio-1894.
 {¶ 28} Accordingly, when Grottla-Kennedy's motion for attorney fees was filed on August 2, 2001, the last final judgment had not been entered in the case, and the motion was timely under R.C. 2323.51(B)(1). The second assignment of error is, therefore, without merit and is overruled.
 III {¶ 29} The last three assignments of error deal with the merits of the attorney fee award and will be considered together. In these assignments of error, Surface contends that the award was not supported by any evidence, was contrary to law or unsupported by evidence if based on the fact that negotiations failed, and was also contrary to law or not supported by the evidence if it was based on a significant disparity in the parties' income.
 {¶ 30} Under R.C. 2323.51(B)(2)(c), an award of fees may be made after the court:
 {¶ 31} "[c]onducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made."
 {¶ 32} Under the statute, frivolous conduct is conduct of a party or counsel of record satisfying either of the following:
 {¶ 33} "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal.
 {¶ 34} "(ii) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." R.C. 2323.51(A)(2)(a)."
 {¶ 35} Decisions concerning whether pleadings or arguments are warranted under existing law or changes in the law are reviewed de novo.Passmore v. Greene Cty. Bd. of Elections (1991), 74 Ohio App.3d 707,712. However, factual findings are given greater deference. For example, decisions whether a party has engaged in conduct merely to harass or maliciously injure another are factual, and are evaluated under an abuse of discretion standard. See Lewis v. Powers (June 13, 1997), Montgomery App. No. 15461, 1997 WL 335563, *4, and Riston v. Butler,149 Ohio App.3d 390, 2002-Ohio-2308, ¶ 22.
 {¶ 36} In the present case, the decisions of the trial court and magistrate focused on the fact that Surface and Grottla-Kennedy had agreed to cooperate in computing child support and the fact that Surface's failure to cooperate was partly the reason for Grottla-Kennedy's significant legal fees. We consider this a finding that Surface engaged in conduct merely to harass Grottla-Kennedy, and will consider it using an abuse of discretion analysis. This means that the trial court's attitude was "`unreasonable, arbitrary, or unconscionable.'" Schafer v. RMS Realty (2000), 138 Ohio App.3d 244,306.
 {¶ 37} As we said, Surface claims the evidence does not support the trial court's findings. Specifically, Surface points to various factors like his own willingness to use administrative remedies to calculate support; a "legitimate" dispute over whether Grottla-Kennedy had another minor child living with her for whom she received support; and Surface's alleged fear that designating a "custodial parent" on an agreed child support computation worksheet would be a judicial admission as to custodial status.
 {¶ 38} Before addressing these points, we note that our review of this matter does not simply encompass the trial court's findings, but extends to the entire trial court record. Turner Management Co. v. Estateof Timmons (Sept. 7, 1999), Franklin App. No. 98AP-1422, 1999 WL 688179, *3. After reviewing the entire record, we find no abuse of discretion in the trial court's findings. To the contrary, the record reveals a pattern of delay and obstruction by Surface in establishing appropriate child support. Child support is an item that is easily computed and is not generally subject to great dispute, due to the existence of statutory guidelines. Despite this, obtaining a final support figure took more than three years, due to Surface's obstinance.
 {¶ 39} As we mentioned earlier, Surface's complaint to establish paternity was originally filed in April, 1998. About one month later, an agreed order and entry was filed, providing Surface with visitation every Tuesday and on alternating weekends. At the time of the agreed order, Surface was represented by counsel.
 {¶ 40} On June 22, 1998, the magistrate held a hearing on various issues. At that time, paternity was agreed upon, and the issue of child support was also discussed. Surface asked that the matter be referred to the Clark County Child Support Enforcement Bureau. However, Grottla-Kennedy's counsel objected to a referral, because the matter was pending in Juvenile Court and could be resolved by the court proceeding that was already in place. The magistrate also observed at the hearing that the court and child support agency had the same computer software. Therefore, the court could easily compute support in "five minutes." Accordingly, the magistrate ordered Surface to provide a copy of his pay-stub to the court within 24 hours.
 {¶ 41} At the June, 1998 hearing, Surface's attorney was allowed to withdraw as counsel, based on disagreements with Surface. Several days after the hearing, the magistrate filed a decision finding paternity established (by agreement of the parties). In the decision, the magistrate noted that Surface had been ordered to present a pay-stub, but had provided paperwork that did not appear to comply. As a result, the magistrate ordered a further hearing to determine if the document Surface had submitted was a pay-stub. Visitation issues were also to be considered at the hearing. The magistrate's decision also included a temporary support order of $97.45 per week, based on Surface's self-reported income of about $45,000 per year. The fact that the support order was temporary was clearly indicated in the decision.
 {¶ 42} Although a further hearing was set, it was postponed because Surface had obtained new counsel. Subsequently, on October 21, 1998, an agreed entry was filed, signed by attorneys for both parties. In the entry, the parties agreed "to exchange information and compute a child support calculation worksheet using the paychecks previously submitted by the parties to the Court" and "to prove to the court an agreed final child support computation for submission to the CSEA." The entry also referred the parties to mediation on issues of visitation and a shared parenting plan that Surface had submitted.
 {¶ 43} Mediation failed, however, and after another hearing, the magistrate filed a decision on July 15, 1999, finding that Surface's proposed shared parenting plan was not appropriate, due to lack of interaction and cooperation between the parties. The magistrate decided that the mother should be the residential parent and that Surface should be given liberal visitation. Grottla-Kennedy filed objections to the magistrate's decision because it did not deal with the issue of establishing a final support order, even though wage information was gathered at the hearing. Surface did not file any objections to the decision.
 {¶ 44} A hearing was set for March 1, 2000, on Grottla-Kennedy's objections. The delay was due to the fact that the trial court had initially dismissed the objections, and then changed its mind. However, after the court decided to allow the objections, Surface filed a second motion to dismiss the objections in February, 2000. The motion was filedpro se, even though Surface still had an attorney at the time. Shortly thereafter, Surface's attorney filed a motion to withdraw, based on differences of opinion with Surface.
 {¶ 45} After the attorney withdrew, Surface began filing variouspro se motions, objections, and discovery requests. Finally, in August, 2000, Grottla-Kennedy's attorney filed a motion to stay discovery pending a ruling on the objections that Grottla-Kennedy had filed. The trial judge then held a hearing in August, 2000, to attempt to resolve the disputes. At that time, the judge suggested that the parties simply move forward and begin cooperating. During this hearing, Surface indicated that he agreed to Grottla-Kennedy's custodial status. Specifically, the following exchange occurred when the judge and Surface discussed one of Surface's claims (this involved Grottla-Kennedy's failure to accept Surface's position that the support order entered at the July 22, 1998 hearing was a final order, as opposed to a temporary support order):
 {¶ 46} "The Court: They might accept it. I might hear that they are willing to let bygones be bygones and move ahead. Are you?:
 {¶ 47} "Mr. Surface: I am.
 {¶ 48} "The Court: You're willing to move ahead that she should be the custodian?
 {¶ 49} "Mr. Surface: Correct.
 {¶ 50} "The Court: And that the support — I can't change what it was in the past. It should be in keeping with your income and her income.
 {¶ 51} "Mr. Surface: No. I want —
 {¶ 52} "The Court: What difference does it make what happened in `98 if we agree today. From this day forward — I'm asking do you want to go back and rehash all of that, Mr. Surface?
 {¶ 53} "Mr. Surface: I really don't because it is such a chore."
 {¶ 54} Despite this comment, Surface then declined to move forward in the way the court had suggested. The reason given by Surface was that the child support guidelines did not give him "room to plan for a college education, a wedding, a car, or a start in life" for his daughter. At that point, because Surface would not agree to base child support on his actual income, the court indicated that proceeding with further negotiations would be futile. The court then said it would issue a ruling on the various pending objections and disagreements.
 {¶ 55} After the hearing, the trial court filed an entry on October 24, 2000, adopting all the prior magistrate's reports, and indicating that the only unresolved issue was the final support order. The court ordered all discovery stayed and stated that it would set a further hearing on support and visitation. Following this decision, Surface submitted several more voluminous pro se filings. The matter was eventually referred to another magistrate, who set a pre-trial hearing for January 12, 2001. Both sides were ordered to bring original pay-stubs for the months of November and December, 2000, as well as evidence of other income, to the pre-trial.
 {¶ 56} The transcript of the January 12, 2001 pre-trial hearing is 67 pages long. This is consistent with the rest of the transcripts in the file, which show much unnecessary time devoted to issues that should have been easily resolved. At the pre-trial, Surface refused to turn over his pay-stubs when asked, and finally turned them over only after the magistrate issued a direct order from the bench. Ultimately, after a long, fruitless discussion, the magistrate ordered both sides to appear at depositions with three years' tax records, all their bank books, and any documents pertaining to any other assets they had accumulated since the June, 1998 temporary support order was filed. Depositions were then set for February 6, 2001, at the courthouse, due to the need for a magistrate to be nearby to rule on the many expected objections. A trial date was also set for March 9, 2001.
 {¶ 57} Subsequently, Surface appeared on February 6, 2001, and told the court that he did not bring the documentation as ordered, because the court lacked competent jurisdiction. The court then ordered Surface to appear in court on February 13, 2001, with the documents, including tax returns from 1995 though 2000, or face issuance of a show cause order for contempt. On that date, Surface appeared and produced some records, but refused to produce his income tax returns. The court responded by issuing a show cause order, to be heard on March 9, 2001 (eventually continued to March 30, 2001).
 {¶ 58} On March 30, 2001, a final support hearing was held. At that time, the magistrate decided not to pursue the contempt issue, because neither side had provided complete copies of income tax records. However, the magistrate did take evidence about the support issue.
 {¶ 59} On July 10, 2001, the magistrate issued a decision finding that Surface had under-represented his income for 1998 by about 135%, and that additional child support should have been paid from the date of the original temporary order. The magistrate re-calculated support for 1998 through the date of the hearing, and ordered Surface to pay $50 per week on the arrearage. An increase in the amount of current support was also ordered. The magistrate also reserved jurisdiction to entertain motions for fees and costs.
 {¶ 60} Grottla-Kennedy's fee motion of August 2, 2001, covered fees between the dates of October 5, 1999 and May 17, 2001, in a total amount of $5,570. Both before and after the motion was filed, Surface bombarded Grottla-Kennedy and the court with filings, including a complaint of "contempt, obstinate behavior, and fraudulent transfers," which was filed on August 13, 2001. In this document, Surface raised various matters that had allegedly occurred in the past, such as Grottla-Kennedy's failure to withdraw objections to a magistrate's decision. Surface asked that Grottla-Kennedy be assessed attorney fees, and be jailed for criminal contempt for engaging in these actions.
 {¶ 61} On November 7, 2001, the trial court adopted the magistrate's decision on support. In the entry, the trial court outlined many pleadings that had been filed, and specifically found that "Mr. Surface's actions, since the filing of this case, have been a sham to prevent an increase in the payment of support for his daughter."
 {¶ 62} Our decision affirming the final support order followed on April 19, 2002. Undeterred by the trial court's decision, or ours, Surface continued to attempt to litigate issues that had been previously resolved. For example, on July 9, 2002, Surface filed a twenty-page request with the Juvenile Court, for "final order on paternity, final order on parenting time, temporary and permanent orders halting wage withholding, declaratory judgment, and money judgment against defendant" (Grottla-Kennedy). In view of Surface's admission of paternity four years earlier, and our recent decision affirming the final support award, these requests lacked any credibility.
 {¶ 63} The attorney fee hearing was held on December 3, 2001. At the hearing, the magistrate indicated that he would take judicial notice of the content of the file, including the trial court's previous finding on the frivolous nature of Surface's litigation. In the decision, the magistrate indicated that the record revealed significant fees caused to Grottla-Kennedy by Surface's failure to comply with his agreement to calculate support. We agree with these findings.
 {¶ 64} We note that Surface agreed on the order of visitation in July 1998, failed to object to the mother's designation as residential parent in July 1999, and admitted that he did not object to the custodial status in August, 2000. In light of these facts, Surface's alleged fear of making a judicial admission about custody in a child support worksheet lacks credibility. Likewise, the record does not support Surface's claims about his willingness to use administrative remedies or his claim concerning the alleged dispute about support Grottla-Kennedy received for another child. As the magistrate noted in 1998, child support computations could have been easily performed in a few minutes by the court. Despite this fact, obtaining a final support order took more than three years, and cost many thousands of dollars. Information about other child support orders pertaining to Grottla-Kennedy was also a matter of public record and could have been easily obtained.
 {¶ 65} Based on the above discussion, we find that the award of fees was not an abuse of discretion. It was also not based on "failed negotiations." To the contrary, Surface agreed to cooperate in obtaining support computations. Instead of cooperating, he obstructed the process for three years.
 {¶ 66} The final issue raised in this regard is the magistrate's comment about the disparity in income between the parties. Surface claims this is an improper reason to award fees. Such a factor is relevant to fee awards under R.C. 3105.18(H). However, as we stressed earlier, the present case does not fall within that statute.
 {¶ 67} On the other hand, income disparity is not completely irrelevant even if it is not explicitly mentioned in R.C. 2323.51. Specifically, a relative lack of financial assets can motivate frivolous litigation, since parties with greater financial assets can easily bludgeon less financially secure opponents into submission. Most litigants would not admit to such motives, but the race for justice is obviously won at times by those with the most "well-heeled" feet. Part of the reason for statutes allowing attorney fees is to prevent such events. In fact, if the trial court had wanted, it could have awarded fees as part of the support under R.C. 3111.13, rather than proceeding under R.C. 2323.51. In a similar context in a paternity case, the Eighth District Court of Appeals observed that:
 {¶ 68} "[q]uite clearly, the dilatory maneuvers employed by Willacy [the putative father] to evade his legal responsibilities toward his offspring, while pirouetting about the legal landscape running up the legal costs of plaintiffs, set the stage for the trial court in awarding attorney fees to plaintiffs in the amount of $5,000 as support. This support, albeit in the form of compensation for incurred attorney fees as support and not as a punitive measure for frivolous conduct pursuant to R.C. 2323.51, is authorized pursuant to the liberal policies governing the award and terms of child support pursuant to R.C. 3111.13." Nwabarav. Willacy (1999), 135 Ohio App.3d 120, 139.
 {¶ 69} Accordingly, based on the preceding discussion, we find the third, fourth, and fifth assignments of error without merit.
 IV {¶ 70} The final issues to be discussed are Grottla-Kennedy's request for attorney fees and her request that we dismiss the appeal because Surface failed to timely file his brief. Regarding the latter point, we gave Surface an extension of time until December 21, 2002, to file his brief. However, Surface did not file his brief until December 26, 2002.
 {¶ 71} We may dismiss an appeal for such a failure under App.R. 18(C), but choose not to do so under the circumstances of this case. Given the procedural history of this case, the parties are better served by having the merits of the issues addressed.
 {¶ 72} Grottla-Kennedy has also requested attorney fees for responding to the appeal, in the amount of $1,818.75. Surface has not filed a response to the motion.
 {¶ 73} Under App.R. 23, if we decide that an appeal is frivolous, we may require the appellant to pay the appellee's reasonable expenses, including attorney fees and costs. An appeal is frivolous when it presents "no reasonable question for review." Danis Montco Landfill Co.v. Jefferson Twp. Zoning Comm. (1993), 85 Ohio App.3d 494, 498. In view of the above discussion, we do not necessarily think the appeal lacked any reasonable question for review — although the issue is quite close. Consequently, the motion for attorney fees is overruled.
 {¶ 74} Accordingly, assignments of error one through five are overruled, and the trial court judgment is affirmed. The motion for attorney fees is also overruled. Costs will be assessed against Appellant.
FAIN, P.J., and WOLFF, J., concur.