[Cite as *DeWitt v. Jensen*, 2014-Ohio-529.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

NATHANIEL J. DEWITT                 :

     Plaintiff-Appellant              :              C.A. CASE NO.    25768

v.                                                   :              T.C. NO.    11CV6198

ERIC JENSEN, et al.                    :                  (Civil appeal from
                                                                        Common Pleas Court)

     Defendants-Appellees          :

                                                    :

         . . . . . . . . . .

**O P I N I O N**

Rendered on the   14th   day of     February    , 2014.

         . . . . . . . . . .

THOMAS M. GREEN, Atty. Reg. No. 0016361 and SEAN P. McCORMICK, Atty. Reg. No. 0088281, 800 Performance Place, 109 N. Main Street, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellant

GREGORY A. HARRISON, Atty. Reg. No. 0029814 and PETER J. GEORGITON, Atty. Reg. No. 0075109, 255 E. Fifth Street, Suite 1900, Cincinnati, Ohio 45202
      Attorneys for Defendant-Appellee State Farm Fire and Casualty Company

JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 575 S. Dixie Drive, Vandalia, Ohio 45377
      Attorney for Defendant-Appellee Eric Jensen

         . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Plaintiff-appellant Nathaniel J. DeWitt appeals from a decision of the Montgomery County Court of Common Pleas, Civil Division, concluding that, based upon the factual findings of the jury, defendant-intervening counterclaimant Eric Jensen was not entitled to coverage under insurance policies issued by intervening plaintiff State Farm Fire and Casualty Company to DeWitt's parents. The judgment rendered by the trial court was issued on April 23, 2013. DeWitt filed a timely notice of appeal with this Court on May 23, 2013.

**{¶ 2}** DeWitt and Jensen first met in 2009 when they were enrolled as freshman at the University of Dayton (hereinafter "UD") and became friends. The incident which forms the basis of the instant appeal occurred on February 6, 2010, when DeWitt and Jensen were both students attending UD. On that day, Jensen and his girlfriend, Rebecca Robinson, ended their relationship. Robinson, also a UD student, had dated DeWitt for a short time prior to dating Jensen.

**{¶ 3}** As a result of his breakup with Robinson, on February 10, 2010, Jensen was upset. Nevertheless, Jensen decided to go out and spend time with friends. Specifically, Jensen visited DeWitt's dormitory room at Stuart Hall at UD. Once there, Jensen hung out with DeWitt, Sean Kelly, a friend of DeWitt's, and DeWitt's roommate, Max Schoen. After a short time, Jensen left the dormitory alone to attend another party being held on the UD campus. DeWitt and Kelly also left together to attend another party at UD.

**{¶ 4}** Upon arrival, DeWitt and Kelly happened upon Robinson who was also attending the same party, and the three students began socializing. At Robinson's suggestion, the three students went to another party being held on campus. At the second

party, Robinson began dancing on a coffee table and persuaded DeWitt to join her. While both Robinson and DeWitt were dancing on the table, Jensen arrived at the party and observed the pair. Jensen testified that he was unhappy at seeing his friend and ex-girlfriend dancing together. Moreover, Jensen was aware that DeWitt and Robinson had previously dated which exacerbated his sense of betrayal.

{¶ 5} Jensen walked to the kitchen in the back of the house. DeWitt followed Jensen into the kitchen to speak to him. DeWitt testified that he sought to defuse the situation but Jensen struck him the face approximately five to eight times. DeWitt did not strike Jensen back but merely held his hands up in front of his face to defend himself. As a result of Jensen's attack, DeWitt suffered two black eyes, a broken nose, and two chipped teeth.

{¶ 6} Jensen testified that after he observed DeWitt and Robinson dancing on the table, he walked towards the rear of the house in order to remove himself from the situation. Jensen further testified that Dewitt followed him into the kitchen and grabbed him by the shoulder. Jensen testified that DeWitt told him "don't be a bitch." Jensen testified that he flailed his arm and accidentally punched DeWitt in the face only once in "reaction" to being grabbed by the shoulder.

{¶ 7} After being struck by Jensen, DeWitt went back to his dorm room with Kelly and put ice on his face. On the advice of his mother, DeWitt went to the hospital the next morning to be treated for his injuries. While DeWitt was at the hospital, Jensen visited him and apologized for his actions.

{¶ 8} On August 30, 2011, DeWitt filed a complaint against Jensen alleging

negligence, battery, and intentional infliction of emotional distress. As a result of the lawsuit against him, Jensen sought coverage under his parents' insurance policies issued by State Farm. On January 6, 2012, State Farm filed a motion to intervene based upon Jensen's attempt to seek insurance coverage for his offenses against DeWitt. The trial court granted State Farm's motion to intervene on January 22, 2012. On January 24, 2012, State Farm filed an intervening complaint seeking a declaration that its policies with Jensen's parents do not provide coverage for the altercation on February 10, 2010. State Farm argued that Jensen's conduct was not an "accident," and therefore, did not constitute an "occurrence" or "loss" within the meaning of the policies issued to Jensen's parents. Additionally, State Farm contended that Jensen's conduct was intentional and malicious, and therefore excluded by the policies.

{¶ 9} On July 19, 2012, State Farm filed a motion for summary judgment. As an intervening defendant/counterclaimant, Jensen filed his own motion for summary judgment against State Farm seeking coverage under his parents' insurance policies. After extensive discovery was conducted and the filing of responsive memoranda, the trial court overruled both parties' motions for summary judgment on September 11, 2012.

{¶ 10} Immediately prior to the beginning of the trial, DeWitt voluntarily dismissed his claims for battery and intentional infliction of emotional distress, proceeding solely with his claim for negligence. Additionally, on March 5, 2013, DeWitt and Jensen entered into a stipulation that Jensen's act of striking DeWitt in the face on February 10, 2010, was negligent. State Farm was not a party to the stipulation. The case then proceeded to trial on March 12, 2013, with the court advising the jury that there were in fact two distinct cases

being tried together. At the close of evidence, DeWitt moved for a directed verdict on his negligence claim as well as the issue regarding Jensen's intent, or lack thereof, in striking DeWitt regarding State Farm's coverage claim against Jensen.

{¶ 11} The trial court granted DeWitt's motion for directed verdict with respect to the negligence claim. The trial court and the parties participated in the following discussion regarding DeWitt's motion for directed verdict:

The Court: *** Tom, that gets us back, I think, to the issue of a motion for directed verdict that you intend to raise and now is the time to do that, I think.

Mr. Green: Plaintiff moves for directed verdict on the issue of liability in the claim of DeWitt versus Jensen. Basis, obviously being, that the elements of negligence have been established both by testimony; by admission of counsel in opening statement; and finally by witness stipulation, that is a part of the record in this case, both with respect to each of the elements of negligence and with respect to proximate causation.

We believe the only issue remaining for the jury's determination would be damages.

***

The Court: Okay. Mr. Harrison, I don't think you have a dog in this fight, but if you think you do, please –

***

Mr. Harrison: I'm sorry, Your Honor, I do think I need to make a

record – and based on what I understand the Court's rulings are to this point, and will be in terms of the instructions that'll be provided, which will provide that the stipulation between the Plaintiff and the Defendant is not binding on, or effective against State Farm, that the jury's determination, or the – the determination of the Court to direct a verdict, will not preclude State Farm from continuing to press the coverage issues. And that that determination will not prevent the jury from answering in the affirmative or – or in terms of finding that there was either willful and malicious conduct or that it was – harm was expected or intended, in light of that ruling, I do not have an objection, but – but I just wanted to – to make that – that argument. That is the basis for my lack of objection to the response to the motion.

The Court: And in response, Mr. Harrison, you have accurately summarized the Court's position, which will be reflected ultimately, there may be changes yet to come in the jury instructions or jury interrogatories after you all get a chance to see the latest version, but on that, on those issues, the Court will not waiver and that will be the Court's position in terms of presenting the instructions and jury interrogatories to the jury.

I will say to the jury that the stipulation entered into between Mr DeWitt and Mr. Jensen is not binding upon State Farm. And I will permit the jury to answer the two interrogatories that have been proposed, that you've mentioned by State Farm. I will do that.

So, with regard to the motion for directed verdict, given the

stipulation, given the response of counsel, I will direct a verdict for Mr. DeWitt on the issue of negligence by Mr. Jensen and the issue of that negligence proximately causing injury to Mr. DeWitt and it will then be the function of the jury to determine the damages that should be awarded to Mr. DeWitt.

Mr. Harrison: Thank you, Your Honor.

The Court: Is there any – gentlemen, any other issues that the Court should do now on this massive housekeeping session?

\*\*\*

Mr. Green: – for fear that somehow I will be later have deemed, be deemed to have waived it.   And that is that I also believe and I'm not going to make this an extended argument, that I also believe that it would be appropriate for the Court to take from the jury any issues with respect to State Farm, whatsoever, because you have now determined what I believe to be the dispositive issue on the – the question of coverage is – as the negligence of Mr. Jensen.   And that it would be inappropriate, then, to – to permit the jury to deliberate on the question of malicious or willful or expected or intended or any other variant of intentional.

I respect, and I understand, that the Court has already indicated to us how you intend to rule. I just want to make sure that my record is absolutely clear *that I'm protesting at every opportunity that I can.*

\*\*\*

The Court: *The Court simply disagrees as a matter of law regarding any preclusive effect of the stipulation between DeWitt and Jensen, the directed verdict that the Court just entered relating to, what I will refer to as the coverage issues. I think that is independent and distinct and, in fact as you've seen from our discussions, heard from our discussions, and I think seeing from some of the documentation, some of the instructions already, it's my intent to inform the jury that there are two distinct cases that are part of this trial.*

*And so, rightly or wrongly, it's my legal conclusion that the jurors should make determinations, factual determinations in the declaratory judgment action, and those should be made by answering the interrogatories that that Mr. Harrison just referenced and that once those factual determinations are made, then the Court, as a matter of law, will decide the declaratory judgment dispute that exists between State Farm and Jensen. And that's my intent.*

{¶ 12} The trial court subsequently instructed the jury to decide the amount of damages to be awarded to DeWitt in his case against Jensen. Significantly, the trial court permitted the jury to determine whether Jensen's act of striking DeWitt was intentional or merely accidental. Ultimately, the jury rendered a verdict awarding DeWitt $50,000.00 in damages against Jensen. The jury also found that Jensen's act of striking of DeWitt was intentional and malicious, thereby precluding coverage under the State Farm insurance policies issued to Jensen's parents.

{¶ 13} Following post-trial briefing by the parties, the trial court issued a written decision on April 23, 2013, affirming the verdict rendered by the jury that Jensen was not entitled to coverage under the State Farm policies as a matter of law because his conduct fell within the policies' explicit exclusions for "expected or intended" harm and conduct that was "willful and malicious." The trial court also reaffirmed its decision to permit the jury to decide the issue regarding Jensen's intent, as advanced by State Farm.

{¶ 14} It is from this decision that DeWitt now appeals.

{¶ 15} DeWitt's sole assignment of error is as follows:

{¶ 16} "THE TRIAL COURT ERRED IN RULING THAT THE STATE FARM INSURANCE POLICIES DID NOT PROVIDE COVERAGE FOR JENSEN AS TO THE JUDGMENT IN FAVOR OF DEWITT."

{¶ 17} In his sole assignment, DeWitt contends that the trial court erred when it permitted the jury to determine the issue of Jensen's intent because the trial court had in fact directed a verdict on negligence. Specifically, DeWitt argues that the trial court could not find Jensen's conduct to be negligent on the one hand, but then permit the jury to simultaneously find the same conduct to be intentional. DeWitt asserts that the directed verdict finding negligence is clearly inconsistent with the jury's answers to interrogatories finding that Jensen's conduct was intentional, thereby precluding coverage under his parents' insurance policies.

{¶ 18} In response, State Farm argues that the jury's determination was not inconsistent because the jury was never asked to enter a finding that Jensen acted both negligently and intentionally for purposes of liability. State Farm also points out that it was not a party to the stipulation between DeWitt and Jensen and did not consent to it.

Therefore, according to State Farm, a directed verdict based upon that stipulation was not dispositive as to the issue of Jensen's intent with respect to State Farm's intervening declaratory judgment action. State Farm further asserts that had the trial court prevented it from litigating the issue of Jensen's intent before the jury, it would have impermissibly precluded State Farm from pursuing its declaratory judgment action.

{¶ 19} Initially, we note that throughout the trial in the instant case, the trial court and the parties referred to and treated the matter as two separate cases that were being tried together. The "first" case involves the lawsuit filed by DeWitt against Jensen sounding in battery, intentional infliction of emotional distress, and negligence. However, at the time of trial the only surviving claim in the "first" case was the negligence claim. The "second" case involves the declaratory judgment action filed by State Farm, as an intervening party, against Jensen in order to determine whether his conduct which caused injury to DeWitt was covered by the insurance policies.

{¶ 20} As previously stated, based on the stipulation and the arguments of counsel during trial, the court directed a verdict in favor of DeWitt on the issue of negligence as well as the issue of Jensen's negligence proximately causing injury to DeWitt. DeWitt asserts that collateral estoppel bars State Farm from attacking the judgment by allowing the jury to consider whether Jensen acted intentionally.

{¶ 21} The doctrine of collateral estoppel states that "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Hicks v. De La Cruz*, 52 Ohio St.2d

71, 74, 369 N.E.2d 776, 777 (1977). "Collateral estoppel precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'" *Krahn v. Kinney*, 43 Ohio St.3d 103, 107, 538 N.E.2d 1058 (1989). However, the doctrine does not apply "where the causes of action are not the same, even though each action relates to the same subject matter.*" Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943) (overruled on other grounds).

{¶ 22}  Upon review, we find the directed verdict granted by the trial court was not a final judgment as contemplated in R.C. 2505.02 (i.e., "[a]n order that affects a substantial right in an action *that in effect determines the action and prevents a judgment*."). *Soler v. Evans, St. Clair & Kelsey*, 94 Ohio St.3d 432, 435, 763 N.E.2d 1169 (2002). In the instant case, the trial court directed a verdict on negligence based on the stipulation entered into by DeWitt and Jensen and the arguments of their respective counsel during trial. The stipulation, as acknowledged by the parties and the trial court, was only effective and binding with respect to DeWitt and Jensen. State Farm was not a party to the stipulation and thus, did not waive its right to pursue judgment on the claims advanced in its intervening complaint. The directed verdict subsequently granted by the trial court merely disposed of the surviving negligence claim in the "first" case. It was not a final judgment because State Farm's declaratory judgment action against Jensen still remained to be litigated.

{¶ 23}  The disposition in the "first" case had no preclusive effect on the ability of State Farm to assert its claims against Jensen. The jury questions submitted by State Farm regarding whether Jensen's conduct was intentional for purposes of coverage under the insurance policies were properly put before the jury in the "second" case. Significantly the

"second" case remained to be litigated. Whether Jensen acted intentionally, thereby precluding coverage under the policies, was properly before the jury. The jury's ultimate finding that Jensen acted intentionally was not inconsistent with a final judgment nor precluded by the directed verdict on stipulated negligence in the "first" case. When judgment was rendered on March 21, 2013, finding Jensen liable to Dewitt for $50,000.00, the judgment was final for all of the parties involved in the litigation and fully encapsulated the jury's finding that Jensen acted intentionally and maliciously when he struck DeWitt. Accordingly, the trial court's decision issued on April 23, 2013, finding that Jensen was not entitled to coverage under the State Farm insurance policies is not contrary to law.

{¶ 24} DeWitt's sole assignment of error is overruled.

{¶ 25} DeWitt's sole assignment having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., concurring:

{¶ 26} This could be described as the case(s) of the multiple-personality jury.

{¶ 27} Usually, the parties and the court make every effort to keep any information about possible insurance coverage away from the fact finders. Here, the insurance company affirmatively sought to intervene and then did not request a separate trial; and even submitted interrogatories to the jury when, legally, a decision on its declaratory judgment action was not a matter for the jury to decide. At the same time, the plaintiff did not object to, and as acknowledged at oral argument, welcomed, the open discussion of insurance

before the fact finder(s).

{¶ 28}   It appears that the parties agreed to try two different cases at the same time. Given the unique circumstances portrayed by the record, I concur with the majority that collateral estoppel does not preclude the court's final judgment that insurance coverage is not available for damages sustained by the plaintiff.

. . . . . . . . . .

Copies mailed to:

Thomas M. Green
Sean P. McCormick
Gregory A. Harrison
Peter J. Georgiton
Jeffrey D. Slyman
Hon. Michael W. Krumholtz